USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 9/2/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**BRENDAN VALLELY,**

**Plaintiff,**

**-against-**

**NEW YORK STATE DEPARTMENT OF HEALTH, et al.,**

**Defendants.**

-----------------------------------------------------------------X

**25-CV-07868 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Brendan Vallely ("Plaintiff") brings this suit against his current employer, the New York State Department of Health ("DOH"), and eight current and former DOH Bureau of Narcotic Enforcement ("BNE") employees—Danny Vazquez, Michael Shelhamer, Frederick Boettcher, Daniel Lombardo, Anthony Logozzo, Nekiesha Henry, Mary Sutphen, and John Heaphy (the "Individual Defendants"). Plaintiff alleges claims of retaliation and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

Defendants DOH, John Heaphy, Nekiesha Henry, Daniel Lombardo, and Mary Sutphen (the "Moving Defendants") move for partial dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that Plaintiff's hostile work environment claims fail to state a claim on which relief can be granted. The Moving Defendants' motion for partial dismissal is GRANTED without prejudice, but not for the reasons stated in their brief.

## BACKGROUND

### I. Factual Background

The Court assumes the following facts as true for purposes of this motion. Plaintiff is a 51-year-old white male who has been employed as an "Investigative Specialist I (Narcotics)" with DOH's BNE since 2007. See ECF No. 1 ("Compl.") ¶¶ 1, 19, 58. Between January 2015 and October 2017, Plaintiff also assumed the role of an "Acting Senior Narcotics Investigator." Id. ¶ 63. Plaintiff alleges that beginning in 2023, he experienced repeated mistreatment by multiple superiors and other DOH personnel, which he contends was in direct retaliation for engaging in protected activity. Id. ¶¶ 2–10.

In May 2023, Plaintiff submitted an internal DOH complaint against the Chief of Investigations, Michael Shelhamer ("Shelhamer"), claiming that Shelhamer openly identified himself as a "White Supremacist" during a staff meeting. Id. ¶¶ 82, 88–90. Plaintiff also reported the incident to his supervisor at the time, Danny Vazquez ("Vazquez"), as well as to the Office of Employee Relations ("OER") and the DOH Bureau of Employee Relations ("BER"). Id. ¶¶ 85–88. In addition to reporting Shelhamer's misconduct, Plaintiff also reported to OER and BER the "broader corruption, hostility, and lawlessness" within BNE. Id. ¶ 89. Plaintiff's complaint against Shelhamer was subsequently substantiated by OER, and DOH took administrative action against Shelhamer. Id. ¶¶ 3, 93, 111.

Within days of making his internal DOH complaint, senior BNE investigators Frederick Boettcher ("Boettcher") and Daniel Lombardo ("Lombardo") abruptly barred Plaintiff from investigating illegal electronic controlled prescription cases. Id. ¶¶ 5, 91. "[A]lmost immediately" after making his complaint against Shelhamer, Vazquez also began questioning Plaintiff's work ethic, the accuracy of his work product, and the integrity of his investigations.

Id. ¶ 92. Plaintiff raised his concerns about these workplace changes with BER and filed a formal complaint against Boettcher and Lombardo on May 22, 2023. Id. ¶ 103.

In July 2023, Vazquez sent Plaintiff two emails that questioned his performance and were written in a "hostile and condescending tone." Id. ¶ 104. In response, Plaintiff filed a retaliation and hostile work environment complaint against Vazquez with BER. Id. ¶ 106. Three days later, Vazquez allegedly retaliated against Plaintiff by telling him that he needed "retraining" and "lacked time management skills." Id. ¶ 107. Vazquez further criticized Plaintiff "in a tone of open contempt" and told Plaintiff to "[g]o ahead and make a complaint." Id. ¶ 108. In light of this escalating hostility, on August 6, 2023, Plaintiff filed another internal complaint with OER against Vazquez, Boettcher, and Lombardo. Id. ¶ 114.

Later in August, Plaintiff was told for the first time that he needed approval from Vazquez and Senior Investigator Anthony Logozzo ("Logozzo") before he could receive assistance from another investigator. Id. ¶ 123. Vazquez also denied another investigator's request for Plaintiff's assistance without any explanation. Id. ¶ 128. Plaintiff claims that this new restriction was another form of retaliation against him for filing complaints against Shelhamer, Vazquez, and Lombardo. Id. ¶ 124.

In October 2023, Vazquez sent Plaintiff additional hostile emails that questioned the accuracy and completeness of Plaintiff's work, as well as Plaintiff's use of a state vehicle. Id. ¶ 127. A few weeks later, Vazquez also accused Plaintiff of working from home without a telecommute plan. Id. ¶ 129. Plaintiff claims that the telecommute rules were selectively enforced against him and he was singled out for such scrutiny because of his complaints. Id. ¶¶ 132–33.

Plaintiff also claims that between October and November 2023, Vazquez frequently denied or restricted Plaintiff's overtime requests, and often without any explanation. Id. ¶ 134. Plaintiff alleges that no other employee in his division was subject to such consistent overtime denials. Id. ¶¶ 134, 137.

In December 2023, Plaintiff filed an internal "Stage 1 grievance" against Boettcher and Vazquez after they allegedly pressured him to improperly alter his "Daily Activity Report" and the entries on the "Leave and Time Systems." Id. ¶ 139. A hearing was held in response to the grievance, during which Plaintiff presented proof to BNE Director Mary Sutphen ("Sutphen") and Deputy Director John Heaphy ("Heaphy") of the alleged retaliation and hostile work environment fostered by Boettcher and Vazquez. Id. ¶ 141. Plaintiff's grievance, however, was denied as "moot." Id. ¶ 142. Plaintiff followed up by filing a "Stage 2 grievance," but it was summarily denied. Id. ¶ 143.

On March 14, 2024, Plaintiff testified in a separate federal discrimination case against DOH that involved allegations of sex discrimination and retaliation brought by a former DOH employee. Id. ¶¶ 146–47. About a month after Plaintiff testified in the discrimination case, Vazquez was transferred to BNE headquarters in Albany and Lombardo and Defendant Nekiesha Henry ("Henry") were appointed as Plaintiff's temporary supervisors. Id. ¶¶ 150–51. Lombardo then requested a one-on-one meeting with Plaintiff, during which Lombardo allegedly made "unsettling remarks." Id. ¶ 152. Specifically, Lombardo told Plaintiff that "assignments ha[d] changed" and that Plaintiff "couldn't hurt [him] even if he wanted to." Id. During this meeting, Lombardo also insisted that Plaintiff undergo additional one-on-one firearms training even though there had never been any prior complaints about Plaintiff's firearm skills. Id. ¶¶ 153–54.

After following up with Plaintiff twice about scheduling the firearms training, Lombardo unilaterally scheduled the training for a date that conflicted with Plaintiff's schedule. Id. ¶¶ 157–59. When Plaintiff declined the calendar invitation for the training, Lombardo sent Plaintiff an email written in "a hostile [and] intimidating tone" and warned Plaintiff that noncompliance would be considered insubordination. Id. ¶¶ 160–63. Plaintiff eventually complied with Lombardo's demands and met with him for the firearms training on May 28, 2024. Id. ¶ 164. During the training, Lombardo claimed that colleagues had raised concerns about Plaintiff's firearm handling. Id. Plaintiff, however, contends that the firearm training and Lombardo's threats were merely part of a "campaign of retaliation" against him for his earlier complaints and for testifying in the separate discrimination case. Id. ¶ 166.

Plaintiff also alleges that Defendants retaliated against him by denying him a promotion for a Senior Investigator position. Id. ¶¶ 168–77. Plaintiff claims that the promotion was instead given to Henry even though Henry never applied for or passed the promotional exam and Plaintiff had "superior qualifications." Id. ¶ 172.

In addition to being passed over for a promotion, Plaintiff alleges that Lombardo and Henry retaliated against him by subjecting him to mandatory counseling sessions. Id. ¶¶ 177–78. On May 22, 2024, Lombardo gave Plaintiff "verbal counseling" related to his refusal to submit to the firearms training. Id. ¶ 178. A few weeks later, Lombardo and Henry subjected Plaintiff to another counseling session regarding Plaintiff's work laptop and his daily activity report entries. Id. ¶ 180. During this session, Lombardo warned Plaintiff that he was "required to follow all orders and directives from [his] superiors, and failure to do so [could] result in disciplinary action." Id. ¶ 181. Lombardo also told Plaintiff that he would provide training on "adhering to directives, efficient use of state time and resources, and the requirement to report to work fully

equipped with all the necessary tools." Id. ¶ 182. When Plaintiff tried to defend his record, Lombardo dismissed Plaintiff's concerns, accused him of wasting time and DOH resources, and shouted at him in "a loud and threatening tone." Id. ¶¶ 185–86.

On December 30, 2024, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") against Defendants, and he received his Right to Sue Notice on July 25, 2025. Id. ¶¶ 194–95. Less than a month later, Boettcher notified Plaintiff that he was restricted to "office-only" assignments pending an undefined "ongoing investigation." Id. ¶ 196. This new restriction effectively barred Plaintiff from engaging in field investigations, using a state vehicle without receiving prior approval, and carrying his BNE-issued firearm in the field. Id. ¶ 197.

On August 25, 2025, Plaintiff reported these new restrictions to his union and submitted an internal retaliation complaint with OER, BER, and BNE. Id. ¶¶ 201–02. Within minutes of submitting his complaint, Henry sent Plaintiff an email stating that Plaintiff had supervisor approval to carry his state-issued firearm without restrictions. Id. ¶ 203.

Finally, Plaintiff also alleges that after he filed his EEOC complaint, Defendants delayed issuing the firearm verification documentation necessary for renewing his pistol permit and continued to block him from certain promotional opportunities. Id. ¶¶ 204–12. Plaintiff claims that as a result of such retaliatory actions, he has suffered monetary losses and emotional distress. Id. ¶¶ 214–15.

## II. Procedural Background

Plaintiff initiated this action on September 22, 2025. See ECF No. 1. Plaintiff asserts claims of retaliation in violation of Title VII against DOH (Count I); hostile work environment in violation of Title VII against DOH (Count II); retaliation in violation of the NYSHRL against all

Individual Defendants (Court III); retaliation in violation of the NYCHRL against all Individual Defendants (Count IV); hostile work environment in violation of the NYSHRL against all Individual Defendants (Count V); and hostile work environment in violation of the NYCHRL against all Individual Defendants (Count VI). See Compl. ¶¶ 218–45.

Defendants Vazquez, Shelhamer, Boettcher, and Logozzo answered the Complaint on November 26, 2025. See ECF No. 31. The Moving Defendants (represented by separate Defense counsel) filed a partial motion to dismiss under Rule 12(b)(6) on December 1, 2025, seeking to dismiss only the hostile work environment claims (Counts II, V, and VI). See ECF No. 33. The Moving Defendants argue, primarily, that Plaintiff's allegations do not meet the "severe and pervasive" standard under Title VII, or even the lesser standard under the NYSHRL and the NYCHRL. See ECF No. 34.

On August 12, 2026, the Court scheduled oral argument on the partial motion to dismiss. See ECF No. 50. The Court noted in its scheduling order that Plaintiff's hostile work environment claims may fail because the Complaint does not allege that the mistreatment was "because of" Plaintiff's membership in a protected class. Id. The Court cited cases that supported this conclusion and directed the parties to be prepared to discuss those cases and any others. Id. In particular, the Court directed Plaintiff's counsel to present any cases that support a standalone hostile work environment claim that is not tethered to discrimination based on a protected characteristic. Id.

At oral argument, the Moving Defendants stated that Plaintiff's hostile work environment claims fail because Plaintiff does not allege that the alleged retaliatory actions were because of his membership in a protected class. See August 24, 2026 Hearing Transcript ("Aug. 24, 2026 Tr.") at 4:22–5:16. Plaintiff maintained that the retaliatory treatment he experienced created a

"retaliatory hostile work environment" that is separately actionable from his retaliation claims. Id. at 5:21–6:13, 12:6–12, 15:9–15. The case law Plaintiff referenced, however, does not support this proposition.

**STANDARD OF REVIEW**

In considering a motion to dismiss brought under Rule 12(b)(6), the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The moving party bears the burden of demonstrating that the claimant has failed to state a claim. See Pearl River Union Free Sch. Dist. v. Duncan, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014). To survive a Rule 12(b)(6) motion to dismiss, the operative complaint "must allege sufficient facts, taken as true, to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013). The Court should therefore not dismiss a complaint if the plaintiff has provided enough facts to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to a plaintiff, however, the Court is "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" Rolon v. Henneman, 517 F.3d 140, 149 (2d Cir. 2008) (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## DISCUSSION

### I. Plaintiff's Title VII Hostile Work Environment Claim Against DOH (Count II)

To establish a Title VII hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014). "Because Title VII prohibits only discriminatory workplace behavior, a hostile work environment arises *only* where the relevant conduct occurred 'because of' the plaintiff's membership in a protected class." Donohue v. Finkelstein Mem'l Libr., 987 F. Supp. 2d 415, 424 (S.D.N.Y. 2013) (quoting Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004)) (emphasis added).

Plaintiff's Complaint does not satisfy the standard for establishing a Title VII hostile work environment claim. Plaintiff alleges that he was "subjected to unwelcome conduct based on his engagement in protected activity, including ongoing threats, hostility and exclusion from work opportunities." Compl. ¶ 225. Although Plaintiff's allegations describe unpleasant and potentially serious workplace mistreatment, the Complaint does not include facts supporting a reasonable inference that the alleged mistreatment occurred "because of [Plaintiff's] membership in a protected class." Donohue, 987 F. Supp. 2d at 424 (internal quotation marks and citation omitted); see also Littlejohn v. City of New York, 795 F.3d 297, 320 (2d Cir. 2015) (noting that in the context of a hostile work environment claim, "Title VII prohibits an employer from

discriminating in 'compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex or national origin'") (quoting 42 U.S.C. § 2000e–2(a)(1)). While Plaintiff describes himself as a "51-year-old white male," he does not allege any facts that suggest that the workplace misconduct he experienced was because of his age, race, or gender. Indeed, at oral argument, Plaintiff's counsel disavowed any such connection. See Aug. 24, 2026 Tr. at 5:21–23 ("[T]his is not a traditional hostile work environment claim that is based on race or any protected category."); id. at 12:10–12 ("We said nothing about complaints of discrimination because that's not what the claim is here.").

Instead, Plaintiff expressly alleges that the hostility he experienced was "based on his engagement in protected activity." Compl. ¶ 225. Plaintiff's engagement in protected activity, however, does not on its own constitute a protected class for purposes of supporting a hostile work environment claim. Rather, Courts in this Circuit have consistently treated similar retaliatory hostile work environment allegations as part of a retaliation claim, rather than a separate, stand-alone hostile work environment claim. See, e.g., Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (considering retaliatory harassment allegations under the adverse action prong of a retaliation claim); Tyson-Phipps v. Blinken, No. 23-CV-2316 (LAK)(GWG), 2024 WL 4128445, at *8 (Sept. 10, 2024), report and recommendation adopted, 2024 WL 4444281 (S.D.N.Y. Oct. 8, 2024) ("Case law does not permit a plaintiff to claim that certain actions were motivated by . . . retaliation and at the same time claim that they formed a hostile environment claim."); Servello v. New York State Off. of Child. & Fam. Servs., No. 18-CV-0777 (LEK)(DJS), 2019 WL 974972, at *10 (N.D.N.Y. Feb. 28, 2019) (finding that where a plaintiff alleges that the "cumulative effect of the retaliatory actions" created a hostile work

environment, consideration of those actions "within the context of a stand-alone hostile work environment claim would be largely duplicative of [a] retaliation claim").

The Court of Appeals has been clear that "[a] claim of retaliatory hostile work environment must . . . be treated identically to a claim that an employer took multiple retaliatory actions that were, in the aggregate, materially adverse." Carr v. New York City Transit Auth., 76 F.4th 172, 180 (2d Cir. 2023) (internal quotation marks omitted). "Even if a plaintiff labels [a] retaliation claim as a 'retaliatory hostile work environment' claim, courts should not consider whether the allegedly retaliatory actions meet the higher 'severe and pervasive' standard" applied to a Title VII hostile work environment claim. Id. at 181. Therefore, based on the facts alleged in the Complaint, Plaintiff's retaliatory hostile work environment allegations should be treated as part of his Title VII retaliation claim against DOH, rather than as a separate Title VII hostile work environment claim. Since the Moving Defendants have not moved to dismiss any of Plaintiff's retaliation claims, however, the merits of Plaintiff's retaliatory hostile work environment claim will not be addressed at this time.

Accordingly, because Plaintiff does not allege that the retaliatory hostile work environment occurred due to his membership in a protected class, and because Plaintiff's hostile work environment claim against DOH is largely duplicative of his retaliation claim against DOH, Count II is dismissed. However, Plaintiff's hostile work environment allegations against DOH survive, not as separate hostile work environment claims, but only insofar as they support Plaintiff's retaliation claim against DOH.

## II. Plaintiff's NYSHRL and NYCHRL Hostile Work Environment Claims Against the Individual Defendants (Counts V & VI)

Plaintiff separately brings hostile work environment claims against the Individual Defendants pursuant to the NYSHRL (Count V) and the NYCHRL (Count VI). Similar to his

Title VII hostile work environment claim against DOH, Plaintiff alleges that the Individual Defendants subjected him to a hostile work environment in violation of the NYSHRL and the NYCHRL "because of his complaints of discrimination." Compl. ¶¶ 241, 244.

Under the NYSHRL, it is unlawful for an employer "to discharge from employment . . . or to discriminate against [a person] in compensation or in terms, conditions or privileges of employment" based on a protected characteristic (*i.e.*, "because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence"). See N.Y. Exec. Law § 296(1)(a). Thus, a plaintiff alleging a hostile work environment claim under the NYSHRL must "plead sufficient facts showing [he] was 'subjected to inferior terms, conditions, or privileges of employment' due to [his] membership in a protected class." Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024) (quoting Samuels v. City of New York, No. 22-CV-1904 (JGK), 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023)).

"Historically, the same standard [applied to Title VII hostile work environment claims] also applied to NYSHRL hostile work environment claims." Samuels, 2023 WL 5717892, at *9. "In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300)). "The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard

between federal and city law." Wheeler v. Praxair Surface Techs., Inc., 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023). Despite the unsettled question, the prevailing view in this District has been to consider claims involving post-amendment conduct under the NYSHRL in concert with claims under the NYCHRL. See Lee v. Riverbay Corp., 751 F. Supp. 3d 259, 279 (S.D.N.Y. 2024) (finding the "pleading standard set forth in the NYCHRL" to be "applicable to NYSHRL claims" based on post-amendment conduct); Arazi v. Cohen Bros. Realty Corp., No. 20-CV-8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard . . . ."); but see Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) ("[I]t is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims."); Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021) (explaining that the 2019 amendment to the NYSHRL effectively brought the standard closer to the more lenient standard provided under the NYCHRL). In order to view the Complaint in the light most favorable to the Plaintiff, the Court assumes for purposes of this motion that the amended NYSHRL aligns with the NYCHRL.

The NYCHRL makes it unlawful for an employer or employee to "discriminate against [a] person in compensation or in terms, conditions or privileges of employment" because of their actual or perceived membership in a protected class. See N.Y.C. Admin. Code § 8–107(1)(a) (identifying protected characteristics to include a person's "age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status"). Under the NYCHRL, there "are not separate standards" for hostile work environment and discrimination claims. Johnson v. Strive E. Harlem Emp. Grp.,

990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Instead, "the former is subsumed into the latter, and a plaintiff need only prove that [he] has been treated less well than other employees because of a protected trait." Rothbein v. City of New York, No. 18-CV-5106 (VEC), 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019) (internal quotation marks and citation omitted).

Accordingly, it follows that to survive a motion to dismiss for a hostile work environment claim brought under either the NYSHRL or the NYCHRL, a plaintiff must plausibly allege that he was treated "less well" due in part to his membership in a protected class. See Bautista v. PR Gramercy Square Condominium, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (internal quotations and citations omitted); see also Gerardo Perez v. Trinity School Realty Holding Corp., et al., No. 24-CV-544 (VEC), 2026 WL 2123265, at *10 (S.D.N.Y. July 23, 2026) ("To succeed on a claim of hostile work environment pursuant to the NYSHRL and the NYCHRL, 'the plaintiff need only show differential treatment that [he] is treated less well — because of a discriminatory intent.'") (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)).

As with Plaintiff's Title VII hostile work environment claim, his NYSHRL and NYCHRL hostile work environment claims fail because he does not allege that he was subjected to workplace hostility because of a protected characteristic. Although the NYSHRL and NYCHRL standards are more liberal than the Title VII standard, the state and city-law hostile work environment standards still require a protected-status nexus. The Complaint alleges several adverse workplace conditions, including Boettcher and Lombardo barring Plaintiff from investigating certain cases (see Compl. ¶ 91); Vazquez questioning Plaintiff's work ethic and work product (id. ¶¶ 92, 129); Vazquez sending Plaintiff emails written in a "hostile and

condescending tone" (id. ¶ 104); Plaintiff being told that he needed a supervisor's approval before he could receive any work assistance (id. ¶ 123); Plaintiff being denied overtime requests (id. ¶ 134); Plaintiff being subjected to unprecedented one-on-one training and counseling sessions (id. ¶¶ 156, 178); Plaintiff being denied certain promotional opportunities (id. ¶¶ 172, 176, 211); and Defendants delaying the renewal of Plaintiff's state-issued pistol permit (id. ¶¶ 204–07). The Complaint, however, does not plead any facts to support a plausible inference that such adverse conditions were imposed because of Plaintiff's membership in a protected class. Rather, the Complaint frames the alleged mistreatment as retaliation for Plaintiff filing complaints against Shelhamer, Boettcher, Lombardo, and Vazquez, as well as for testifying in a separate discrimination case. See id. ¶¶ 2–6, 91, 107, 114, 124, 166. Such allegations may support Plaintiff's retaliation claims under the NYSHRL and the NYCHRL, but without any connection to an alleged protected characteristic, the allegations do not sufficiently establish separate hostile work environment claims.

Therefore, because Plaintiff has not alleged any facts that suggest that the alleged mistreatment was due in part to his membership in a protected class, his NYSHRL and NYCHRL hostile work environment claims (Counts V and VI) are dismissed.

**III. Leave to Amend**

In his opposition to the partial motion to dismiss, Plaintiff requests (in the alternative) leave to replead. See ECF No. 40 at 24. The Court has discretion to grant leave to amend where "justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend, however, should generally be denied "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008).

Plaintiff has not previously been afforded an opportunity to amend his Complaint and, therefore, further amendment would not necessarily be futile or unduly prejudicial to Defendants. That said, Plaintiff's counsel conceded at oral argument that Plaintiff was not alleging that the workplace hostility he experienced was because of his membership in a protected class. See Aug. 24, 2026 Tr. at 5:21–23. As such, amendment may not be warranted in light of the Court's ruling.

Within 21 days of the entry of this Opinion and Order, Plaintiff may amend his Complaint to allege a protected-status nexus in his hostile work environment claims. If Plaintiff elects to file an amended complaint, Defendants may answer or otherwise respond to the amended complaint within 21 days of filing. If Plaintiff does not amend the Complaint, the hostile work environment claims will be deemed dismissed with prejudice and the Moving Defendants must answer the original Complaint within 28 days of the entry of this Opinion and Order.

## CONCLUSION

The Moving Defendants' partial motion to dismiss is GRANTED, and Plaintiff's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL (Counts II, V, and VI, respectively) are DISMISSED without prejudice. Because Plaintiff has not previously amended his Complaint, Plaintiff's request for leave to replead is GRANTED. Plaintiff may file an amended complaint within 21 days from the date of this Opinion and Order. If Plaintiff declines to amend his Complaint, his hostile work environment claims shall be deemed dismissed with prejudice.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: September 2, 2026
New York, New York